**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RICHARD D. PAISNER,<br>Plaintiff,<br>v.<br>LIP-BU TAN, *et al.*,<br>Defendants,<br>and<br>INTEL CORPORATION,<br>Nominal Defendant. | C.A. No. 1:26-cv-00414-RGA |

# INTEL DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT


OF COUNSEL:

MUNGER, TOLLES & OLSON LLP
John M. Gildersleeve (*pro hac vice*)
Brian Rivas Boessenecker (*pro hac vice*)
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

MUNGER, TOLLES & OLSON LLP
Bridget Fitzpatrick (*pro hac vice*)
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
(202) 220-1131

AKERMAN LLP
Tammy L. Mercer (#4957)
Samuel E. Bashman (#6751)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
(302) 596-9200

*Attorneys for Defendants Lip-Bu Tan, Frank D. Yeary, Craig H. Barratt, James Goetz, Andrea J. Goldsmith, Alyssa H. Henry, Eric Meurice, Barbara Novick, Steve Sanghi, Gregory D. Smith, Stacy J. Smith, Dion J. Weisler, and Nominal Defendant Intel Corporation*


August 19, 2026

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ........................................................................................1
ARGUMENT ........................................................................................................2
A. Plaintiff Fails to Show That Directors Received a Material Personal Benefit...........3
B. Plaintiff Fails to Show That Directors Acted in Bad Faith .......................................7
C. Plaintiff Ignores Binding Authority Providing That Count IV Is Derivative ..........10
CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Cognizant Tech. Sols. Corp. Deriv. Litig.*,
101 F.4th 250 (3d Cir. 2024) ....................1, 3

*Gupta v. Wilkinson*,
594 F. Supp. 3d 606 (D. Del. 2022)....................7

**STATE CASES**

*ACP Master, Ltd. v. Sprint Corp.*,
2017 WL 3421142 (Del. Ch. July 21, 2017)....................4

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ....................2

*Berger v. Fox*,
2026 WL 2138280 (Del. Ch. July 24, 2026)....................9

*Boyer v. Wilmington Materials, Inc.*,
754 A.2d 881 (Del. Ch. 1999)....................10

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ....................2

*Brookfield Asset Mgmt., Inc. v. Rosson*,
261 A.3d 1251 (Del. 2021) ....................10

*In re Cornerstone Therapeutics Inc. S'holder Litig.*,
115 A.3d 1173 (Del. 2015) ....................3, 4, 10

*In re Edgio, Inc. S'holder Litig.*,
2023 WL 3167648 (Del. Ch. May 1, 2023)....................6, 10

*Encite LLC v. Soni*,
2011 WL 5920896 (Del. Ch. Nov. 28, 2011) ....................10

*Gottlieb v. Duskin*,
2020 WL 6821613 (Del. Ch. Nov. 20, 2020) ....................5

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003)....................4, 7

*Klein v. H.I.G. Cap., LLC*,
2018 WL 6719717 (Del. Ch. Dec. 19, 2018)....................7

*Lebanon Cty. Emps. Ret. Fund v. Collis*,
311 A.3d 773 (Del. 2023) ....................8

*Lyondell Chem. Co. v. Ryan*,
970 A.2d 235 (Del. 2009) ....................7

*Maffei v. Palkon*,
339 A.3d 705 (Del. 2025) ....................6

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
2011 WL 2176479 (Del. Ch. May 31, 2021) ....................8

*In re Match Grp., Inc. Deriv. Litig.*,
315 A.3d 446 (Del. 2024) ....................6

*McElrath v. Kalanick*,
224 A.3d 982 (Del. 2020) ....................7, 8

*Off. Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins*,
2004 WL 1949290 (Del. Ch. Aug. 24, 2024) ....................9

*In re RJR Nabisco, Inc. S'holders Litig.*,
1989 WL 7036 (Del. Ch. Jan. 31, 1989) ....................4

*Shafi v. Chien*,
2025 WL 671854 (Del. Ch. Mar. 3, 2025) ....................3

*United Food & Com. Workers Union v. Zuckerberg*,
262 A.3d 1034 (Del. 2021) ....................1, 2, 3, 10

*Wood v. Frank E. Best, Inc.*,
1999 WL 504779 (Del. Ch. July 9, 1999) ....................7

*Young Women's Christian Ass'n v. Hatteras Funds, LP*,
356 A.3d 459 (Del. Ch. 2026) ....................10

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ....................10

Fed. R. Civ. P. 23.1 .................... 1, *passim*

## SUMMARY OF ARGUMENT

The answering brief (AB, D.I. 34) puts the cart before the horse. Plaintiff devotes most of it to constitutional and statutory challenges to the Stock Agreement. But the threshold question is whether Plaintiff can make those arguments at all—that is, whether he can usurp the authority of Intel's board and use Intel to litigate his views about DOC's authority. On that threshold question of demand futility, the answering brief offers little of substance.

Plaintiff does not dispute the test for pleading demand futility with particularity, as set forth in Rule 23.1, *United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021), and *In re Cognizant Technology Solutions Corp. Derivative Litigation*, 101 F.4th 250, 257 (3d Cir. 2024). *See* Opening Br. (OB, D.I. 27) 8-10. In arguing that he has met that test, Plaintiff repeats the Complaint's conclusory assertions that Intel's directors each (a) received a "material personal benefit" because they allegedly avoided hypothetical criticism and because DOC agreed, with exceptions, to vote with recommendations of the board as a whole; and (b) allegedly acted *in bad faith* because they approved an agreement that Plaintiff claims was unlawful. But Plaintiff fails to support those assertions with any particularized factual allegations or any case law. As for the authority cited in the opening brief, Plaintiff fails to address virtually all of it, even decisions of the Delaware Supreme Court.

***No material personal benefit.*** Plaintiff cites no pleaded facts showing that the Stock Agreement gave Intel's directors any "material personal benefit." Instead, he offers broad-brush speculation about directors' "fear" and fails to address—anywhere in the answering brief—that the supposedly fearful directors rejected DOC's initial offer, yielding better terms for Intel. As for the voting provision, Plaintiff fails to explain how any individual director benefited personally and materially from DOC's agreeing generally to vote with recommendations of the board as a whole, and cites no pleaded support for his conclusory suggestion of entrenchment.

***No substantial likelihood of liability.*** Plaintiff cites no pleaded facts showing that Intel's directors did anything *in bad faith*. He does not dispute the Stock Agreement's substantial benefits to Intel and abandons his claim that directors wasted corporate assets or should have negotiated better terms. Instead, Plaintiff argues only that Intel's directors approved the Stock Agreement in bad faith because, in his view, it exceeded DOC's statutory authority. But Plaintiff fails to cite any allegations showing that Intel's directors *knew* of any alleged illegality, which forecloses any possible showing of bad faith.

## ARGUMENT

Before addressing the demand-futility test, Plaintiff makes an argument rejected by the Delaware Supreme Court decades ago. He calls demand futile "as a matter of law" because "it would be unthinkable" for Intel's directors to "rescind[]" the Stock Agreement "just six months" after approving it. AB 27; *see* AB 2 ("the Board cannot impartially consider a demand … because a majority of its members approved that very agreement mere months ago"). In *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), the Delaware Supreme Court rejected the notion that "any board approval of a challenged transaction automatically connotes 'hostile interest' and 'guilty participation' by directors, or some other form of sterilizing influence" because that notion would make the "demand requirements of our law ... meaningless." *Id.* at 814. That has been Delaware law ever since. *See Brehm v. Eisner*, 746 A.2d 244, 257 n.34 (Del. 2000) ("[i]t is no answer to say that demand is necessarily futile because .... [directors] approved the underlying transaction"); *see also Zuckerberg*, 262 A.3d at 1041 (current test "is consistent with and enhances *Aronson*" and "*Aronson*, *Rales*, and their progeny … remain good law").

As for *Zuckerberg*'s demand-futility test, Plaintiff never argues that Intel's directors lack independence under the test's third prong. Therefore, as discussed in the opening brief, the only questions are whether Intel's directors (a) received a material personal benefit or (b) face a

substantial likelihood of liability. Plaintiff identifies no particularized pleaded facts supporting either prong for a majority of directors. Dismissal therefore is required under Rule 23.1. *See Cognizant*, 101 F.4th at 256-57.

### A. Plaintiff Fails to Show That Directors Received a Material Personal Benefit

Like the Complaint, the answering brief does not contend that the Stock Agreement gave Intel's directors anything of economic value. Instead, it argues that directors received the two supposed "material personal benefits" addressed in the opening brief. Plaintiff fails to support that argument with any particularized pleaded facts or any law.

***Reputational damage.*** Rather than cite pleaded facts showing that any of Intel's outside directors sought to "avoid[] becoming the targets of the Trump administration's ire," Plaintiff reiterates generalized speculation about "fear for their own metaphorical hides." AB 29; *see* AB 28-29 (using "fear" six times). As Plaintiff confirms, his argument rests only on the Complaint's cursory and unsupported assertions that, given the President's alleged "modus operandi," "it would be understandable if" all of Intel's directors were "cowed." ¶¶ 113-114, 116 (cited at AB 28). Impugning 11 directors as collectively incapacitated by hypothetical "attacks by President Trump and his supporters on social media and elsewhere," AB 14, does not meet demand futility's "'stringent requirements of factual particularity,'" *Zuckerberg*, 262 A.3d at 1048, and is contrary to Delaware law, under which "'independent directors are presumed to be motivated to do their duty with fidelity,'" *In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1182-83 (Del. 2015).

Plaintiff does not acknowledge, let alone refute, *any* of the authority cited in the opening brief explaining that "Delaware courts reject the idea that directors act improperly 'for the purpose of avoiding speculative reputational risk.'" *Shafi v. Chien*, 2025 WL 671854, at *11 (Del. Ch. Mar. 3, 2025); *see* OB 10-11 (citing cases).

Nor does Plaintiff cite *any* decision in which a court accepted allegations about avoiding reputational damage for purposes of demand futility. None of the three decisions Plaintiff cites involved reputational damage at all, much less found a "material personal benefit" in avoiding it. Two merely recite that a director must "act[] in the good faith belief that her actions are in the corporation's best interests." *Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003); *see In re RJR Nabisco, Inc. S'holders Litig.*, 1989 WL 7036, at *15 (Del. Ch. Jan. 31, 1989) (director must not "cause[] a transaction to be effectuated ... for a reason unrelated to a pursuit of the corporation's best interests"). That much is undisputed; the problem for Plaintiff is that no pleaded facts show that Intel's directors failed to satisfy that standard. *ACP Master, Ltd. v. Sprint Corp.*, 2017 WL 3421142 (Del. Ch. July 21, 2017), addresses measuring damages for breach of fiduciary duty, *id.* at *19-20, and, like the others, it says nothing about pleading demand futility based on alleged fear of reputational damage.

Plaintiff's attempt to marshal board materials fares no better. Plaintiff argues that a DOC official's alleged "threats … made clear that the entire Board was in the President's crosshairs." AB 28. But the cited slide referred to potential consequences for *Intel*, not Intel's directors: the official "sent a clear message to Dave [Zinsner]" (Intel's CFO) and stated that the "board needs to consider ... what the administration can do to help *Intel*" and that "rejection will have consequences that [the official] cannot predict." Ex. E at '012 (emphasis added). Plaintiff argues that because Intel's directors "considered the alleged *benefits* of a 'full throated endorsement' of the President" for *Intel*, they *also* "must have considered" the supposed *personal* "reputational consequences of refusing the transaction"—and acted in bad faith on that latter basis. AB 28 (emphasis added). That inferential leap is pure supposition and incompatible with the presumption that directors act in their company's best interests. *See, e.g.*, *Cornerstone*, 115 A.3d at 1182-83. Moreover, Intel's

directors *did* refuse DOC's initial offer, *see* Ex. E at '008, a pleaded fact that the answering brief never addresses.

***Voting provision.*** Nor does Plaintiff identify particularized facts showing that the Stock Agreement's voting provision gave Intel's directors a "material personal benefit." The answering brief cites no allegations showing that the provision was material, or personal, or a benefit to any director.

Despite labeling it, in conclusory fashion, "a direct, personal benefit," AB 29, Plaintiff fails to explain how a provision that applies to Intel's board as an entity, regardless of its composition, is "personal" to any director. No director "obtained the ability to vote the DOC's shares." AB 28. Rather than address this logical defect, Plaintiff underscores it by stating that one director, Craig Barratt, did *not* receive a "material personal benefit" from the voting provision because he "was not a member of the Board when the Stock Agreement was approved." AB 27 & n.21. That compels Plaintiff to explain what "material personal benefit" Intel's *other* directors received that Barratt has not. Plaintiff has no answer. The provision undisputedly will operate the same way even after the board comprises wholly different individuals, confirming that it is not "personal" in nature.

Plaintiff does not acknowledge, let alone refute, *any* of the authority cited in the opening brief rejecting "conclusory and collective entrenchment theor[ies]." *Gottlieb v. Duskin*, 2020 WL 6821613, at *5-6 (Del. Ch. Nov. 20, 2020); *see* OB 12 (citing cases). Plaintiff does not attempt to identify any allegations showing, for instance, that the voting provision staved off some imminent threat of particular directors being removed from the board. That is because there are none—the Complaint is silent in this regard. Nor does Plaintiff dispute that *DOC* proposed the provision, or that it is permitted by Delaware law. *See* OB 13.

Plaintiff's references to Delaware's "enhanced scrutiny" and "entire fairness" standards of review, AB 29-30, add nothing. "Enhanced scrutiny" applies "during contested director elections and other contests for control." *In re Match Grp., Inc. Deriv. Litig.*, 315 A.3d 446, 460 (Del. 2024). "Entire fairness" applies "[w]here a controlling stockholder transacts with the controlled corporation and receives a non-ratable benefit." *Id.*; *see Maffei v. Palkon*, 339 A.3d 705, 730 (Del. 2025) ("Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally."). To be sure, a well-pleaded material personal benefit might trigger the entire-fairness standard, but the standard does not excuse Plaintiff from pleading that directors, in fact, received such a benefit. Plaintiff has it backwards.

None of Plaintiff's cited decisions held that a voting agreement gave directors a "material personal benefit" or even addressed demand futility under Rule 23.1's particularity standard. *In re Edgio, Inc. Shareholders Litigation*, 2023 WL 3167648 (Del. Ch. May 1, 2023), however, shows what well-pleaded entrenchment allegations look like. There, in addition to requiring an investor to vote with board recommendations, a stockholders' agreement barred the investor from seeking to remove directors and from transferring its shares to anyone for two years and to "the fifty 'most significant' activist investors" for a third year. *Id.* at *1, 4. The plaintiffs showed that directors had "the subjective motive of defending against an activist threat" because "[a]nalysts were speculating that the Company was likely an activist target," the press had identified a potential "'white squire if activists pursue[d] [it],'" and the agreement "expressly and specifically prohibited the transfer of" shares to any "entities likely to launch an activist campaign." *Id.* at *17; *see id.* ("[t]he third year of the Transfer Restrictions bear[s] a good deal of Plaintiffs' burden"). By contrast, Plaintiff makes no entrenchment allegations at all. In Plaintiff's other cited decisions,

a controlling stockholder received "a premium for its shares," *Klein v. H.I.G. Cap., LLC*, 2018 WL 6719717, at *15-16 (Del. Ch. Dec. 19, 2018), or "stood on both sides of the transaction," *Wood v. Frank E. Best, Inc.*, 1999 WL 504779, at *4 (Del. Ch. July 9, 1999). Plaintiff pleads nothing of the sort.

Plaintiff's attempt to plead demand futility based on the voting provision alone, with no allegations of entrenchment, is unprecedented and would make demand categorically futile for any challenge to any transaction with such a provision. Plaintiff provides no support for that expansion of law, which would create "hair-trigger demand excusal" of the sort "eschewed" by the Delaware Supreme Court. *Guttman*, 823 A.2d at 502.

### B. Plaintiff Fails to Show That Directors Acted in Bad Faith

As for *Zuckerberg*'s second prong, which Plaintiff concedes requires directors' *bad faith*, AB 30, Plaintiff abandons his allegations that the Stock Agreement did not benefit Intel. The answering brief does *not* argue that Intel's directors face a substantial likelihood of liability for wasting corporate assets or not obtaining better terms. *See* AB 31. Plaintiff does not acknowledge, let alone refute, *any* of the authority cited in the opening brief explaining that criticizing negotiations or deal terms does not show bad faith. *See McElrath v. Kalanick*, 224 A.3d 982, 994 (Del. 2020) (alleging that "board should have done more" does not show "it acted in bad faith"); *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (bad faith requires "extreme set of facts" in "transactional context"); OB 14 (citing cases).[1]

Having jettisoned the notion of a bad deal, Plaintiff argues only that Intel's directors acted

---

[1] In a footnote, Plaintiff states that "[t]he President's statements are entitled to deference as true." AB 9 n.12. But Plaintiff does *not* address that the statements do not say what Plaintiff claims they say—that a deal was "finalized" on August 11. *See* OB 14-15. The only decision Plaintiff cites, *Gupta v. Wilkinson*, 594 F. Supp. 3d 606 (D. Del. 2022), dismissed a complaint under Rule 23.1 and says nothing about deference to anyone's statements.

in bad faith because the Stock Agreement allegedly "was not authorized by law" and they lacked "a good faith basis for believing it was lawful." AB 31. As DOC correctly explains, the agreement was lawful. Regardless, for purposes of demand futility, one shareholder's after-the-fact assertion of illegality does not show directors' bad faith. "[P]laintiff must plead with particularity that the directors 'acted with scienter, meaning "they had actual or constructive knowledge that their conduct was legally improper."'" *McElrath*, 224 A.3d at 991.

Yet again, Plaintiff does not acknowledge, let alone refute, *any* of the authority cited in the opening brief showing that he must plead directors' *knowledge* of alleged illegality. *See* OB 16 (citing cases). Even his own cited authorities require him to plead facts showing that directors "act[ed] with the intent to violate positive law" and "knowingly caus[ed] [Intel] to seek profit by violating the law." AB 31 (citing *Lebanon Cty. Emps. Ret. Fund v. Collis*, 311 A.3d 773, 780 n.17, 795 (Del. 2023), and *In re Massey Energy Co. Deriv. & Class Action Litig.*, 2011 WL 2176479, at *20 (Del. Ch. May 31, 2021)). Plaintiff identifies no such pleaded facts. No particularized allegation shows that any director was told, or otherwise was aware, that the Stock Agreement purportedly was unlawful.

Nor can Plaintiff flip his burden by ascribing bad faith to Intel's directors because the board materials do not contain an "opinion of counsel" affirmatively vouching for the Stock Agreement's legality. AB 31-32. To plead bad faith, Plaintiff must show that directors were told of illegality, not that they were *not* told of *legality*. Plaintiff cites no authority for that inversion of Delaware law, which could only potentially be justified if illegality were facially apparent. Yet Plaintiff concedes he is not claiming that "Government ownership is 'facially unlawful' but that the DOC lacked statutory authority." AB 32. Plaintiff does not explain how an alleged lack of statutory authority, particularly on the part of Intel's counterparty, would have been apparent to directors

who are not constitutional lawyers. Plaintiff's arguments in this regard—which are premised on, among other things, "legislative history," the "major questions doctrine," and the "unconstitutional delegation doctrine," AB 2—belie any notion that the Stock Agreement's alleged illegality was facially apparent. That is especially so because, as Plaintiff concedes, the government has received shares in private companies in other contexts. *See* AB 16.[2]

The only decision Plaintiff cites on this point, *Official Committee of Unsecured Creditors of Integrated Health Services v. Elkins*, 2004 WL 1949290 (Del. Ch. Aug. 24, 2024), did not involve pleading demand futility with particularity under Rule 23.1. There, the plaintiffs met the notice-pleading standard by alleging that directors approved compensation to a controller in bad faith "without *any* 'consideration, deliberation, or advice from any expert.'" *Id.* at *15 (emphasis added). By contrast, Plaintiff acknowledges that inside and outside counsel and financial advisors met with Intel's board as it considered the potential transaction, *see* ¶¶ 77-78; Ex. E at '007; Ex. F at '020, and that a "[s]mall executive team" including outside counsel "reviewed and discussed [DOC's] proposal … given the economics and potential legal issues of the deal presented," Ex. E at '012; *see* AB 11. While Plaintiff theorizes that Skadden gave conflicted advice, Plaintiff utterly fails to explain how that would show that Intel's *directors* acted in bad faith. *See Berger v. Fox*, 2026 WL 2138280, at *18 (Del. Ch. July 24, 2026) (complaint failed to "adequately allege that Paul, Weiss faced a material conflict, let alone that the Board acted in bad faith by retaining the firm as its legal advisor").

---

[2] As the opening brief explained and Plaintiff does not contest, the initial term sheet referred to a "legal opinion" to be provided *to DOC* "regarding standard corporate authorization and securities matters." OB 16-17. Plaintiff incorrectly states that "Intel advised that no such opinion was provided *to the Board*." AB 34 (emphasis added). In fact, Intel's counsel wrote: "The condition of a legal opinion to be delivered *to the Department of Commerce* at closing set forth in the term sheet ... was not part of the final [Stock Agreement], and no such legal opinion was obtained or provided." Suppl. Decl. of Brian Rivas Boessenecker Ex. 7 at 4 (emphasis added).

Nor can Plaintiff evade his pleading burden by suggesting that directors' knowledge of alleged illegality should be presumed unless they raise and prove an "advice of counsel" defense. AB 33-34. The motion does not assert that defense, or any defense. It explains why the Complaint fails to plead particularized facts sufficient to show bad faith and satisfy Rule 23.1. The decisions cited by Plaintiff—*Encite LLC v. Soni*, 2011 WL 5920896 (Del. Ch. Nov. 28, 2011), *Boyer v. Wilmington Materials, Inc.*, 754 A.2d 881 (Del. Ch. 1999), and *Young Women's Christian Ass'n v. Hatteras Funds, LP*, 356 A.3d 459 (Del. Ch. 2026)—did not involve pleading demand futility or any attempt to allege directors' bad faith.

Finally, Plaintiff's scattered references to the entire-fairness standard, AB 30-31, change nothing because Plaintiff "must plead a non-exculpated claim" against directors "regardless of the underlying standard of review for the transaction." *Cornerstone*, 115 A.3d at 1179-80; *see Zuckerberg*, 262 A.3d at 1054 ("*Cornerstone* eliminated … 'use of the standard of review for the challenged transaction as a proxy for whether directors face a substantial likelihood of liability'"). Having failed to plead bad faith, Plaintiff has not pleaded a substantial likelihood of liability on a non-exculpated claim.

### C. <u>Plaintiff Ignores Binding Authority Providing That Count IV Is Derivative</u>

Plaintiff does not acknowledge, let alone refute, *any* of the authority cited in the opening brief explaining that claims of voting-rights dilution like Count IV are derivative, not direct. *See* OB 19-20 (citing *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251 (Del. 2021), and decisions applying *Brookfield*). The only decision Plaintiff cites did not involve a dilution claim and did not analyze the distinction between direct and derivative claims. *See* AB 33 (citing *Edgio*, 2023 WL 3167648, at *5). As a derivative claim, Count IV is subject to dismissal under Rule 23.1 as well.

## CONCLUSION

The Complaint should be dismissed under Rule 23.1 or, alternatively, under Rule 12(b)(6).

OF COUNSEL:

MUNGER, TOLLES & OLSON LLP
John M. Gildersleeve (*pro hac vice*)
Brian Rivas Boessenecker (*pro hac vice*)
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

MUNGER, TOLLES & OLSON LLP
Bridget Fitzpatrick (*pro hac vice*)
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
(202) 220-1131

Dated: August 19, 2026

AKERMAN LLP

/s/ Tammy L. Mercer
Tammy L. Mercer (#4957)
Samuel E. Bashman (#6751)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
(302) 596-9200
tammy.mercer@akerman.com

*Attorneys for Lip-Bu Tan, Frank D. Yeary, Craig H. Barratt, James Goetz, Andrea J. Goldsmith, Alyssa H. Henry, Eric Meurice, Barbara Novick, Steve Sanghi, Gregory D. Smith, Stacy J. Smith, Dion J. Weisler, and Nominal Defendant Intel Corporation*